**William B. BOISE, Plaintiff,**

v.

**Jo Ivey BOUFFORD, L. Jay Oliva, Defendants.**

**No. 00 Civ. 7844 RWS.**

United States District Court, S.D. New York.

Jan. 11, 2001.

468

William B. Boise, New York, NY, Plaintiff, pro se.

S. Andrew Schaffer, Ada Meloy, New York, NY, for Defendants.

## OPINION

SWEET, District Judge.

Defendants Jo Ivey Boufford, M.D. ("Boufford"), and L. Jay Oliva, Ph.D. ("Oliva") (collectively "defendants"), have moved to dismiss the complaint pursuant to Rule 12(b)(6), Fed.R.Civ.P. No opposition has been filed. For the foregoing reasons, the motion will be granted.

### The Parties

*Pro se* plaintiff William B. Boise ("Boise") is a resident of New York and a tenured Professor of Public Administration at New York University ("NYU"), a private university.

Boufford has been the Dean of the Robert F. Wagner Graduate School of Public Service ("the Wagner School") at NYU since June 1997.

Oliva is the President of NYU.

### Facts

The following facts as stated in the complaint and documents attached and incorporated thereto are presumed to be true for the purpose of this motion to dismiss.

Boise, a 72 year-old white male, is a tenured professor at NYU's Wagner School. Boise claims in essence that he suffered a pattern of discriminatory abuse by defendants from September 1997 through the filing of the complaint in October 2000. He alleges that in two successive academic years, 1998–99 and 1999–2000, Boufford rejected his Teaching Preference request to teach the typical load of five or six courses, and instead reduced his teaching assignment to two and three courses per year, respectively. In addition, Boufford assigned Boise to assist in the development of courses in the Wagner International Initiative, under the direction of a less-experienced professor, Associate Professor Dennis C. Smith ("Smith").[1] Boise does not allege that he has suffered any other adverse employment actions, such as reduced pay or termination.

At a meeting with Boufford on April 30, 1998, after being informed of this assignment, Boise objected to working for a "junior professor" and to having his courseload reduced. Boufford allegedly responded, "I am the Dean of this School and I can do anything I want." (Compl. Ex. 3 at 2. (Feb. 23, 2000 Letter to Oliva and NYU Provost Harvey Stedman.)) Despite Boise's continued objection, Boufford assigned him to continue working with Associate Professor Smith during the next academic year, in what Boise characterizes as "endentured servitude" [sic] involving clerical tasks. (*Id.*) Boise alleges that Smith "takes a command and control attitude toward people who are assigned to work for him" and "has a history of trying to push people out of the School." (*Id.* at 3). In a subsequent letter to Oliva, Boise stated that he "detests Associate Professor Smith." (Compl.Ex. 5.)

---

1. It is unclear from the complaint and documents attached and incorporated by reference thereto how long Boise had been employed at NYU as a tenured professor. However, the Court will accept as true the factual contention in the defendants' brief that Boise had been on the Wagner faculty for "nearly 30 years" as of the date Boufford joined Wagner as the Dean, on June 1, 1997. (Def. Mem. at 2.) Although the complaint similarly fails to allege how long Smith had been on the Wagner faculty, the defendants allege that he had been a Wagner faculty member for 25 years as of the time Boise was first assigned to work with him. (Id.)

Boise filed a complaint with the Wagner School's Faculty Grievance Committee (the "Wagner Committee") on April 8, 1999.[2] The Wagner Committee responded on May 6, 1999, and requested a hearing. The Wagner Committee conducted a hearing on June 24, 2000, during which Boise was advised that as Dean of the Wagner School, Boufford had the authority to schedule and cancel classes of any professor. (Compl. Ex. 3 at 4.) Thereafter, the Wagner Committee issued a three-page Report assessing the complaint on June 30, 1999, which noted a pattern of low enrollment in his classes, and recommended to Boufford a plan to facilitate communication and to schedule an acceptable workload in the future. (Compl.Ex. 2.) Boise filed an appeal to the NYU Faculty Council Grievance Committee (the "NYU Committee") on June 17, 1999, even before the Wagner Committee had issued its Report and recommendations to Boufford.

In a memorandum dated July 1, 1999, Boufford issued a revised teaching schedule for Boise for the 1999–2000 academic year. Although this schedule provided for Boise to teach the standard load of five courses, Boufford cancelled two of them due to lack of enrollment before the end of the registration period. Although Boise concedes that these two courses each had six students enrolled at the time they were cancelled, rather than the minimum of ten, he alleges that the enrollment policy was selectively applied to him because Boufford failed to cancel other classes with fewer than ten students in them taught by other professors in the same term. Boise alleges that in so doing, Boufford discriminated against him and violated the Terms of Engagement that govern faculty meetings. (See Compl. Ex. 3, second attachment.) Moreover, Boise alleged that three students unsuccessfully sought to enroll in one of his courses after it was cancelled. An e-mail from one such student was attached to his complaint. (See Compl. Ex. 3, first attachment.)

In a letter to Oliva and Stedman dated September 12, 1999, Boise raised the allegation of discrimination for the first time, charging that Boufford "demonstrated bias in favor of a part-time, minority appointee" in hiring a "black adjunct" professor to teach a course titled "Human Resource Management," rather than Boise, "a full-time, senior faculty member." (Compl.Ex. 6.)

In a February 23, 2000 letter to the NYU Ad Hoc Grievance Committee requesting reconsideration of these complaints, Boise reiterated these allegations and cited an allegedly discriminatory "verbal gaffe" Boufford made during a speech at NYU's commencement on May 13, 1999.[3] Boise further alleged that Boufford did not commit "such acts of discrimination" against female, minority, or other senior members of the faculty, and so had committed "sexual, race and age discrimination against him." (Compl. Ex. 3 at 5.)

Boise filed a complaint for discrimination on the basis of age, sex, race, color, and disability, with the Equal Opportunity Commission ("EEOC"). The EEOC found that "it is very unlikely that it would find a violation if it invested additional resources in this case," and issued a Right to Sue Notice on September 21, 2000. (Compl.Ex.1.) Thereafter, Boise wrote a letter to Oliva in a final appeal, advising

2. The Wagner Committee consisted of Dick Netzer, Professor of Economics and Public Administration, Anthony R. Kovner, Professor of Public and Health Administration, and Dwight Denison, assistant Professor of Public Administration. (Compl. Ex. 2; Def. Mem. at 2–3.)

3. Boufford inadvertently introduced NYU as "NY Jew," and issued a written apology for her gaffe to the Wagner community, stating, "[n]ext time I will take a sip of water and slow down when I speak." (Id., final attachment.) However, the relevance of this misstatement is dubious at best, as Boise has not alleged discrimination on the basis of religion, and the circumstances of the comment suggest that it was unintentional.

him of these complaints, characterizing Boufford's leadership style as "oppressive," and intimating that she should have been fired, both for her behavior to faculty members and for her verbal gaffe at the 1999 commencement. (Compl. Ex. 5 at 2.)

### Procedural History

On October 17, 2000, Boise filed the instant complaint, alleging race and gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e–17 ("Title VII"); age discrimination in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634 ("ADEA"); and discrimination based upon Boise's perceived hearing loss in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112–12117 ("ADA"). The complaint alleges that defendants engaged in discriminatory conduct by providing unequal terms and conditions of employment, and engaging in retaliation, "endentured servitude [sic], involuntary service, maladministration, administrative malpractice, [and] hostile work environment." (Compl.¶ 4.)

The stated factual basis for the complaint include: (1) "improper[ly] and inappropriate[ly]" assigning Boise to work for "another employee junior in rank and years of service," Smith, as "an endentured servant"; and (2) reducing Boise's "madatory workload [sic]" and "effectively destroying [his] longtime work pattern, against the will of plaintiff." (Compl.¶ 8.) Boise seeks relief in the form of an injunction to "bring an end to the disruptions of" his work, and $2 million in damages, plus costs and attorneys' fees.[4]

On December 5, 2000, defendants filed the instant motion, arguing that the complaint should be dismissed on the grounds that (1) they are not proper defendants under any of the federal civil rights statutes enumerated in the complaint because they are not Boise's "employers"; (2) the conduct alleged does not make out a claim

for discrimination; and (3) the complaint fails to allege facts suggesting a discriminatory animus on the part of defendants or any other NYU entity. No opposition was filed.

### Discussion

#### I. Legal Standard for a Motion to Dismiss

In reviewing a motion to dismiss under Rule 12(b)(6), a court must "accept as true the factual allegations of the complaint, and draw all inferences in favor of the pleader." *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993) (*citing IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1052 (2d Cir.1993)). A *pro se* complaint is given liberal construction, particularly where civil rights violations are alleged, *see George v. Lorenzo,* No. 98 Civ. 0769(LAP), 1999 WL 397473, at *1 (S.D.N.Y. June 15, 1999); *Cruz v. Jackson,* No. 94 Civ. 2600(RWS), 1997 WL 45348, at *3 (S.D.N.Y. Feb. 5, 1997) (*citing Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Morgan v. LaVallee,* 526 F.2d 221, 224 (2d Cir. 1975)), although *pro se* plaintiffs must still set forth allegations sufficient to state a claim, *see Doyle v. Columbia–Presbyterian Medical Center,* No. 97 Civ. 5487(HB), 1998 WL 430551 (S.D.N.Y. July 29, 1998). Dismissal is warranted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted). *See also Bass v. Jackson,* 790 F.2d 260, 262 (2d Cir.1986). "A complaint consisting merely of conclusory allegations unsupported by factual assertions cannot meet" the standard of Rule 12(b)(6). *Mina Investment Holdings, Ltd. v. Lefkowitz,* 51 F.Supp.2d 486, 489 (S.D.N.Y.1999) (*citing DeJesus v. Sears, Roebuck & Co., Inc.,* 87 F.3d 65, 70 (2d Cir.1996)).

---

**4.** As Boise has filed this case *pro se,* his claim for attorneys' fees is, at this juncture, moot.

## II. *The Complaint Will Be Dismissed*

The complaint will be dismissed because it is lacking in two essential respects: first, neither Boufford nor Oliva is a properly named defendant pursuant to the federal civil rights statutes under which Boise brings this action, and second, the facts alleged, even if true, do not state a claim that Boise has been discriminated against on the basis of his sex, race, age, or perceived disability, in violation of the enumerated antidiscrimination statutes.

### A. *Neither Boufford Nor Oliva Is a Proper Defendant Under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Age Discrimination in Employment Act, or the Americans with Disabilities Act*

 Title VII provides a private cause of action by individuals whose civil rights have been violated by enumerated acts of discrimination by their "employers." 42 U.S.C. §§ 2000e(b) (defining "employer"), 2000e–2(a), (m) (enumerating impermissible grounds of discrimination). However, although Title VII defines "employers" as including employers' "agents," 42 U.S.C. § 2000e(b), the Second Circuit has interpreted this language to mean that "employer-entities" (such as NYU) may be held liable for the discriminatory acts of their agents (such as Boufford and Oliva), not that supervisors or agents are subject to individual liability. *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313–1317 (2d Cir. 1995). Fortifying the Second Circuit's reasoning in *Tomka*, the Supreme Court has recognized that the "primary objective" of Title VII is "to avoid harm," which is best accomplished by placing liability— and therefore the incentive to prevent violations—on the employer rather than its individual agents and supervisors. *Faragher v. City of Boca Raton*, 524 U.S. 775, 806, 118 S.Ct. 2275, 2291, 141 L.Ed.2d 662 (1998). In light of congressional intent in enacting Title VII, as well as the fact that "the plaintiff has the best chance of recovering from the employing entity," which has the deeper pockets, the *Tomka* Court held that "individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII". *Tomka*, 66 F.3d at 1313.

Because each of the other federal civil rights statutes Boise invokes, the Civil Rights Act of 1991, 42 U.S.C. § 1981a ("CRA"), the ADA and the ADEA, was modelled after Title VII,[5] courts generally apply to them the reasoning of Title VII cases. *See, e.g., EEOC v. AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1279–80 (7th Cir.1995) (noting that due to similarity between ADA, Title VII, and ADEA statutes, "[c]ourts routinely apply arguments regarding individual liability to all three statutes interchangeably.").

Specifically, the *Tomka* rule that Title VII liability applies only to employer entities rather than individual supervisors has been extended to the CRA, *Tomka*, 66 F.3d at 1315, the ADA, *Figueroa v. National Audubon Society*, No. 99 CIV. 1651RCC HBP, 2000 WL 1170116, *2 (S.D.N.Y. Aug. 17, 2000); *Seres v. Liberty Chevrolet, Inc.*, No. 98 Civ. 5999(RPP), 1999 WL 11779 (Jan. 12, 1999); and the ADEA, *Martin v. Chemical Bank*, No. 95–9015, 96–9365, 129 F.3d 114, 1997 WL 701359, *3 (2d Cir. Nov. 10, 1997) (table) ("individual supervisors may not be held personally liable under the ADEA."); *Houston v. Fidelity*, No. 95 Civ. 7764(RWS), 1997 WL 97838 (S.D.N.Y. Mar.6, 1997).

Therefore, because Boufford and Oliva are supervisory defendants who are not subject to individual liability pursuant to Title VII, the CRA, the ADEA, and the ADA, the complaint must be dismissed.

---

5. The CRA adds compensatory and punitive damages to the remedies available under Title VII, 42 U.S.C. § 1981a; the ADEA bans age discrimination using the same language as Title VII, 29 U.S.C. § 623(a); and the ADA extends Title VII to disability, 42 U.S.C. § 12112.

## B. Even if a Proper Defendant Were Named, The Complaint Fails to State a Cause of Action for a Violation of the Enumerated Civil Rights Statutes

Title VII provides that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment ... because of [the employee's] race, color, religion, sex, or national origin," 42 U.S.C. § 2000e–2(a)(1), or to retaliate against an employee for opposing an unlawful discriminatory practice, 42 U.S.C. § 2000e–3(a). Boise claims that his rights were violated by discriminatory retaliation and due to a hostile work environment.[6]

### 1. Retaliation

██ To state a claim for discriminatory retaliation, a plaintiff must show that (1) he participated in a protected activity known to the defendant; (2) the employer took adverse action against the plaintiff; and (3) there was a causal connection between the protected activity and the adverse employment action. *See Sands v. Runyon*, 28 F.3d 1323, 1331 (2d Cir.1994).

██ The facts alleged in the complaint fail to state a claim for several reasons. First, there is no allegation that Boise took any action—protected or otherwise—that "caused" an adverse employment action against him. In fact, the first action Boise took that could qualify under this prong was filing the EEOC petition raising discrimination claims on April 18, 2000, yet the acts he complains of here took place before that filing was made, and so could not be a result of retaliation.[7] Second,

---

6. Boise's allegations of "maladministration" and "administrative malpractice" are not cognizable under the enumerated federal civil rights statutes and therefore will not be addressed here. To the extent that claims of "endentured servitude [sic]" and "involuntary service" conceivably may arise under the Thirteenth Amendment to the United States Constitution, the facts alleged—disallowing a university professor to teach a full courseload, and assigning him to work under the direction of another professor who is perhaps

without some allegation that Boise's reduced courseload and assignment to work under the direction of Associate Professor Smith were a result of Boise's protected activity or status, these changes are not "adverse employment actions" that are cognizable under Title VII. "Not every unpleasant matter short of [discharge or demotion] creates a cause of action" under Title VII. *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir.1997) (citation omitted). Rather, a "materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Campbell v. Grayline Air Shuttle*, 930 F.Supp. 794, 802 (E.D.N.Y.1996).

In *Gupta v. Florida Board of Regents*, 212 F.3d 571 (11th Cir.2000), the Eleventh Circuit recently considered a similar Title VII case of a university professor who complained of, *inter alia*, being assigned to teach more credit hours than other professors, and not being granted her request to teach a desired class. The *Gupta* court held that these actions were not "adverse employment actions" rendered unlawful under Title VII, because

[a] university can assign its professors to teach the classes it needs them to teach. Although Gupta complaints that she was not assigned a particular class in the second session of Summer 1995, she presented no evidence at all that she was in any way entitled to or particularly deserving of that class, as opposed to the classes she was assigned to teach, or that other untenured professors routine-

---

five years his junior in terms of experience—simply fail to support such a charge. Tenure is not "indentured servitude;" rather it provides Boise a significant degree of job security while leaving him free to seek employment elsewhere if he so chooses.

7. Boise did not allege discrimination in any of his prior filings with the Grievance Committees.

ly got to cherry-pick the classes they taught.

*Id.*, 212 F.3d at 588. Similarly, although Boise need not have presented evidence at this initial phase of the proceedings, he must at least allege facts that rise to the level of adverse employment actions in order to withstand this motion to dismiss. The mere fact that Boise experienced an acrimonious relationship with the defendants, without more, does not translate into a federal civil rights cause of action for retaliation. *See Weixel v. Bd. of Educ.*, No. 97 CIV. 9367(DAB), 2000 WL 1100395, *4 (S.D.N.Y. Aug. 7, 2000) ("While it is apparent that [plaintiff] did not enjoy a harmonious relationship with school district personnel, the numerous conflicts described by Plaintiffs do not support a cognizable retaliation claim."). Cases more severe than this one, in which employees have been openly reprimanded and given negative performance reviews, rather than simply being reassigned, have been dismissed for failing to state a cause of action for discrimination. *See, e.g., Castro v. New York City Board of Education Personnel*, No. 96 Civ. 6314(MBM), 1998 WL 108004, *7 (S.D.N.Y. March 12, 1998) (dismissing claim and collecting cases).

Moreover, the bedrock element of a discrimination claim is the allegation of discriminatory intent or animus, that is, that the complained-of acts were committed in an attempt to harm the plaintiff because of his sex, age, or disability. *See Ricks v. Conde Nast Publications, Inc.*, 92 F.Supp.2d 338, 344 (S.D.N.Y.2000) ("The ultimate issue in any employment discrimination case is whether the plaintiff has met her burden of proving that the adverse employment decision was motivated at least in part by an impermissible reason.").

Under the applicable three-step burden shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a plaintiff bears the initial burden of establishing a *prima facie* case of unlawful discrimination by showing that he is (1) a member of a protected class; (2) who was qualified for his position; (3) who suffered an adverse employment action; (4) under circumstances giving rise to an inference of discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *see Austin v. Ford Models, Inc.*, 149 F.3d 148, 152 (2d Cir.1998). The circumstances Boise alleges fail to meet the fourth *McDonnell Douglas* element. Not only does Boise fail to allege facts that give rise to an inference that he was assigned fewer courses and required to work with Associate Professor Smith due to discriminatory animus on behalf of the defendants, but he also alleges that, in fact, no similar acts had been committed against "other senior members of the faculty." (Compl. Ex.3 at 5.) This allegation disposes of his age discrimination claims, as it reveals that the motivation behind these employment decisions had nothing to do with his seniority, or, correspondingly, with his age. Moreover, the mere fact that a younger, African–American woman was assigned to teach a course that Boise had requested does not give rise to an inference of discriminatory bias.

### 2. Hostile Work Environment

The same analysis holds true for Boise's hostile work environment claim. In order to make out such a claim, a plaintiff must allege that his "workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [his] work environment." *Murray v. New York University College of Dentistry*, 57 F.3d 243, 249 (2d Cir.1995). Despite his obviously unharmonious relationship with Smith and Boufford, Boise has failed to allege facts that support his claim that his work environment was rendered hostile by unlawful discrimination, rather than by an ordinary clash of wills. *See, e.g., Kodengada v. Int'l Bus. Mach. Corp.*, 88 F.Supp.2d 236, 243 (S.D.N.Y.2000) (personality conflicts, absent discriminatory animus, are insuffi-

cient to support a hostile work environment claim).

In sum, although Boise, as a white male over the age of 65, is in a protected class on several fronts, the facts he has alleged simply do not make out a *prima facie* case of unlawful discrimination on the basis of sex, age, or disability. "A 'bruised ego' is not enough." *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) (*quoting Flaherty v. Gas Research Inst.,* 31 F.3d 451, 456 (7th Cir.1994)). It therefore appears beyond doubt that Boise can prove no set of facts stating a claim for violations of the enumerated federal civil rights statutes, and the complaint must be dismissed. *See Conley,* 355 U.S. at 45–46, 78 S.Ct. 99.

*Conclusion*

For the foregoing reasons, the complaint shall be dismissed with prejudice.

It is so ordered.