Mary Lou BLISS, Plaintiff,

v.

ROCHESTER CITY SCHOOL
DISTRICT, et al.,
Defendants.

Nancy L. Coons, Plaintiff,

v.

The Board Of Education of the
Rochester City School District,
et al., Defendants.

Pamela Eaton, Plaintiff,

v.

The Board Of Education of the
Rochester City School District,
Et al., Defendants.

Nos. 00–CV–6516L, 00–CV–
6310L, 01–CV–6176L.

United States District Court,
W.D. New York.

March 28, 2002.

Emmelyn Logan–Baldwin, Rochester, NY, for Plaintiff.

Maureen T. Alston, Harter, Secrest and Emery LLP, Rochester, NY, Matthew D. Brown, Harter, Secrest and Emery LLP, Rochester, NY, Gerald John DeWolf, Albany, NY, for Defendants.

## DECISION AND ORDER

LARIMER, Chief Judge.

## I. INTRODUCTION

These cases represent yet another chapter in a line of cases filed by a single attorney on behalf of a number of individuals against the Rochester City School District ("RCSD"), the Rochester Teachers' Association ("RTA"), and numerous individuals employed by, or associated with, the RCSD or RTA. In these and other cases (*see also Seils v. RCSD*;[1] *Murphy v. RCSD*, 00–CV–6038; *Matics v. RCSD*, 00–CV–6612), the prolix complaints set forth numerous vague, often incoherent, causes of action on behalf of current and former RCSD teachers. Because of glaring procedural defects and lack of evidentiary support for the claims, the Court grants summary judgment in favor of all defendants on all causes of action.[2]

*Mary Lou Bliss*

Mary Lou Bliss ("Bliss"), who had been a teacher in the RCSD and a member of RTA, commenced her action against twenty-four named defendants as well as unnamed defendants comprised of "all of the sentry staff at BFHS (Benjamin Franklin

---

1. In many respects, the fatal infirmities in these three actions are the same as those infirmities in *Seils v. RCSD*. As a result, the analysis herein is similar to that adopted in my prior decisions in *Seils*. *See* prior decisions in *Seils:* 192 F.Supp.2d 100 (W.D.N.Y. 2002); 199 F.R.D. 506 (W.D.N.Y.2001); and Decision and Order, entered December 12, 2000 (Dkt.# 139).

2. The complaints in these actions mirror each other in many ways, and plaintiffs have named a number of the same defendants. Because, in large measure, plaintiffs' actions suffer from the same infirmities, I consolidate these three actions, pursuant to Fed. R. Civ. P. 42(a), for the sole purpose of addressing the instant motions.

High School) between 1996 and 1999." (*Bliss* Complaint, Dkt. # 1, nte. 2). Bliss alleges, in nine separate causes of action, claims involving breach of contract, discrimination, and retaliation in violation of Title VII, 42 U.S.C. § 1983 (" § 1983"), 42 U.S.C. § 1985 (" § 1985"), the New York State Constitution, the New York Human Rights Law ("NYHRL"), and the New York Civil Rights Law ("NYCRL"). The complaint alone contains 138 separate paragraphs covering 38 pages.[3] Twenty of the named defendants are directly related to RCSD ("the RCSD defendants in *Bliss* "). They include past or present RCSD employees and past or present members of its board. Three of the named defendants are directly related to RTA ("the RTA defendants in *Bliss* "). One of the defendants is a former student in the RCSD.

### Nancy Coons

Nancy Coons ("Coons"), currently a RCSD teacher and RTA member, commenced her action against twenty-five named defendants. As Bliss does in her case, Coons also alleges claims involving breach of contract, discrimination, and retaliation in violation of Title VII, § 1983, § 1985, the New York State Constitution, the NYHRL, and the NYCRL. Twenty-two of the named defendants are directly related to RCSD ("the RCSD defendants in *Coons* "). They include past or present RCSD employees and past or present members of its board. Three of the named defendants are directly related to RTA ("the RTA defendants in *Coons*"), and are identical to the defendants named by Bliss.

### Pamela Eaton

Pamela Eaton ("Eaton"), another RCSD teacher and RTA member, commenced her action against thirty-one named defendants. As with Bliss and Coons, Eaton alleges claims involving breach of contract, discrimination, and retaliation in violation of Title VII, § 1983, § 1985, the New York State Constitution, the NYHRL, and the NYCRL. Unlike Bliss and Coons, however, Eaton also alleges violations of the Equal Pay Act, 29 U.S.C. § 206(d) ("EPA"). The complaint contains 89 separate paragraphs (one paragraph alone has an additional 61 subparagraphs) (*see Eaton* Complaint, ¶ 32) covering 41 pages. Twenty-six of the named defendants are directly related to RCSD ("the RCSD defendants in *Eaton* "). They include past or present RCSD employees and past or present members of its board. Four of the named defendants are directly related to RTA ("the RTA defendants in *Eaton* "). As Bliss does, Eaton names a former student as one of the defendants.

## II. PROCEDURAL BACKGROUND

Presently before the Court are the RCSD defendants' and RTA defendants'[4] separate motions to dismiss, or, in the alternative, for summary judgment. In response, plaintiffs have cross-moved for partial summary judgment and for injunctive relief. In addition, plaintiffs moved to "supplement the record," to amend the complaint, and sought various forms of discovery-related relief.

Plaintiffs have made the Court's review more difficult by the voluminous, vague and repetitive papers submitted in response to defendants' motions or in sup-

---

**3.** None of these complaints come close to complying with Rule 8, FED. R. CIV. P., concerning the form of the complaint. Rule 8(a) speaks of a "short and plain statement, of the claim." These complaints are neither short nor plain.

**4.** The RCSD defendants in *Bliss, Coons,* and *Eaton* will be referred to collectively as "the RCSD defendants," and the RTA defendants in *Bliss, Coons,* and *Eaton* will be referred to collectively as "the RTA defendants."

port of plaintiffs' various cross-motions. As I noted in *Seils*, "[t]he volume and prolixity is seemingly 'designed to obscure rather than to illumine the events giving rise to this lawsuit.'" *Seils v. RCSD*, entered January 23, 2002, pp. 2–3 (Dkt.# 212) (quoting *Pross v. Katz*, 784 F.2d 455, 456 (2d Cir.1986)). Indeed, plaintiffs' counsel frequently "incorporated by reference" numerous, voluminous documents filed in several cases which she considers "related." *See, e.g., Bliss*, Dkt. #s 22, 27. Together, all of these papers would be measured in feet rather than inches. Moreover, plaintiffs' failure to furnish specific citation and argument as to how these myriad papers demonstrate any issue of fact warranting trial:

> assumes the district court has an affirmative obligation to plumb the record in order to find a genuine issue of material fact. It does not. A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Once [defendant] met its burden of demonstrating a lack of genuine issues of material fact, [plaintiff] was required to designate specific facts creating a triable controversy.

*Barge v. Anheuser–Busch, Inc.*, 87 F.3d 256, 260 (8th Cir.1996) (citations and internal quotation marks omitted); *see also Friedel v. City of Madison*, 832 F.2d 965, 969 (7th Cir.1987) (stating that it was not the court's "duty on appeal to wade through the record and make arguments for either party" and that the nonmoving parties were "fatally remiss in citing to the district court portions of the record that they claimed supported their assertions").

This is not the first time that I have admonished plaintiffs' counsel for her failure to specify the relevance of materials on which she has sought to rely. *See Seils v. RCSD*, Court's letter to plaintiffs' counsel, dated February 15, 2000, and Decision and Order, entered January 23, 2002 (Dkt.# 212).

## III. FACTUAL BACKGROUND

### Mary Lou Bliss

Bliss, a fifty-six year-old Caucasian female, has been employed by RCSD as a special education teacher since 1988. With one exception[5], Bliss taught at Franklin High School ("Franklin") during the course of her employment at RCSD.

Bliss claims, and defendants do not dispute, that she was brutally attacked by a former student, defendant Henry Hill, on March 31, 1998. As a result of Hill's criminal assault, Bliss was hospitalized and took a disability leave-of-absence from her teaching position at Franklin. Bliss claims that when she returned after her medical leave, she was subjected to further harassment by students which caused her to leave Franklin. She has been on medical leave since October 1999.

Most of Bliss's claims revolve around Hill's assault. Bliss sets forth nine causes of action, including claims that defendants[6] discriminated against her because of her "race and/or color and/or sex and/or age" as well, apparently, as her national origin and disability, and retaliated against her. *Bliss* Complaint, Dkt. #1, ¶1, ¶5, p. 10; ¶101. Bliss also alleges a laundry list of claims she considers "harassment" by students that she experienced while at Franklin. Although it is unclear, Bliss appears to claim that she was harassed by students because she is Caucasian, or fe-

---

**5.** During the 1989–1990 academic year, Bliss taught at Monroe Middle School.

**6.** As is often the case throughout the complaints before me, plaintiffs are very vague as to precisely which defendant did what to cause the statutory violations alleged.

male, or older, or disabled. On October 20, 2000, Bliss commenced this action.

*Nancy Coons*

Coons, also a Caucasian female, was hired by RCSD in 1993 as a substitute teacher, and in 1998 she accepted a full-time position. During the 1998–1999 and 1999–2000 academic years, Coons was assigned as an art teacher at School No. 6, an RCSD elementary school. In January 1999, Coons sought to transfer to a different school. The RCSD defendants maintain that her transfer request was denied because there were no art teaching positions available into which she could transfer. In September 2000, Coons voluntarily transferred to a full-time position that allows her to teach regularly at a number of different schools. According to the most recent information submitted to the Court, Coons currently teaches at four different schools (School Nos. 2, 7, 33, and 34) every week.

Like Bliss, Coons alleges a variety of claims. However, she appears to focus her claims on RCSD's hiring and transfer procedures. In particular, she alleges both that she was not offered her permanent position soon enough and that her 1999 transfer request was denied because of her race and national origin, and that she was also discriminated against because of her color and gender, and in retaliation for her actions. Indeed, as Bliss has alleged, Coons claims that defendants discriminated against her because of her "race and/or color and/or national origin and/or sex" as well, apparently, as her age and disability, and retaliated against her. *Coons* Complaint, Dkt. # 1, ¶¶ 1, 21, 33.

On July 6, 2000, Coons commenced this action. Thereafter, 168 days elapsed be-fore Coons first attempted to serve her complaint on December 21, 2000.

*Pamela Eaton*

Eaton, a "Native American/white female" (*Eaton* Complaint, Dkt. # 1, ¶ 3), has been employed by RCSD as a graphic arts teacher since 1997. Eaton, who taught at John Marshall High School ("Marshall"), lists a string of claims similar to those made by Bliss and Coons. Among them are claims that defendants discriminated against her because of her "race and/or color and/or sex and/or religion" as well, apparently, as her national origin, age, and disability, and retaliated against her. *Eaton* Complaint, Dkt. # 1, ¶¶ 1, 29, 50.

Most of Eaton's claims revolve around an assault that she suffered on February 17, 2000. On that day, a former student attacked Eaton with a "sock filled with steel combination locker locks." *Id.*, ¶ 32(d). Eaton was hospitalized for the injuries she sustained in the assault, and since then she has been on a disability leave of absence from her teaching position at Marshall.

Eaton also alleges a laundry list of claims she considers "harassment" by students that she experienced while at Marshall. Although it is unclear, Eaton appears to claim that she was harassed by students because she is Native–American, or white, or female, or older, or disabled. On April 5, 2001, Eaton commenced this action.

## IV. DISCUSSION

The RCSD defendants as well as the RTA defendants now move for summary judgment[7] against Bliss, Coons, and Eaton

---

7. Both RCSD and RTA moved to dismiss, or, in the alternative, for summary judgment. The motions have been treated as ones for summary judgment. In each case, both sides have submitted a considerable amount of material that is outside of the pleadings. Moreover, plaintiffs have each repeatedly referred to the instant motions as ones for summary

on all causes of action on several grounds. For the reasons that follow, the motions are granted and each complaint is dismissed.

## A. Summary Judgment—General Standards In Discrimination Cases

The standard for deciding summary judgment motions is well established. Rule 56(c) provides that a motion for summary judgment shall be granted if the pleadings and supplemental evidentiary materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Under the rule, the burden is on the moving party to inform the Court of the basis for its motion and to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After the moving party has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[T]he non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 587, 106 S.Ct. 1348 (quoting FED. R. CIV. P. 56(e)).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Id.* at 587, 106 S.Ct. 1348. When perusing the record to determine whether a rational fact-finder could find for the non-moving party, however, all reasonable inferences must be drawn in favor of the non-moving party. *See Murray v. National Broadcasting Co.,* 844 F.2d 988, 992 (2d Cir.), *cert. denied,*

488 U.S. 955, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988).

The general principles underlying a motion for summary judgment fully apply to discrimination actions. *Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir. 2000). Although courts should be cautious about granting summary judgment in cases where motive, intent or state of mind are at issue, *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir.1988); *Montana v. First Federal Savings and Loan Ass'n of Rochester,* 869 F.2d 100, 103 (2d Cir.1989), "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to commercial or other areas of litigation." *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985) (summary judgment rule would be rendered sterile if mere incantation of intent or state of mind would act as a talisman to defeat an otherwise valid motion). Consequently, once the moving party has met its burden, the non-moving party in a discrimination action must come forward with evidence upon which a rational fact-finder could return a verdict in his favor. For a plaintiff in a discrimination case to survive a motion for summary judgment, he or she must do more than present "conclusory allegations of discrimination," *Meiri v. Dacon,* 759 F.2d 989 (2d Cir.), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985); he or she must offer "concrete particulars" to substantiate the claim. *Id.* (cited in *Duprey v. Prudential Ins. Co.,* 910 F.Supp. 879 (N.D.N.Y.1996)).

## B. The Title VII Claims

There are a number of reasons, procedural and substantive, as to why the

---

judgment. *See, e.g.,* Plaintiffs' Memorandum in *Bliss,* Dkt. # 26 (acknowledging that the

RCSD and RTA defendants are moving for summary judgment, in the alternative).

RCSD and RTA defendants' motions for summary judgment must be granted in each of these cases.

### 1. *Procedural Defects*

#### a. *Mary Lou Bliss*

Many of plaintiff's federal claims suffer from the fatal procedural infirmity that they were untimely on June 29, 2000 when she filed her EEOC charge. This alone mandates dismissal of all such claims.

Prior to the commencement of the instant action, Bliss had not filed any grievance with the RCSD or the RTA. She did not file an administrative charge with the EEOC until June 29, 2000, which was 821 days after the March 1998 assault on which she bases much of her action. Shortly thereafter, she requested a right-to-sue letter, which was issued on July 24, 2000, 25 days after she filed her charge. It is axiomatic that allegations of discrimination occurring more than 300 days prior to the date a charge is filed are time-barred under Title VII. *See, e.g.,* 42 U.S.C. § 2000e–5(e)(1); *Butts v. New York Dep't of Housing Preservation & Dev.,* 990 F.2d 1397, 1401 (2d Cir.1993). Therefore, her federal claims are limited to incidents alleged to have occurred on or after September 3, 1999, 300 days before she filed her original charge on June 29, 2000.

■ Bliss concedes that many of her claims were based on acts alleged to have occurred more than 300 days before she filed her EEOC complaint, but argues that they are preserved by the continuing violation exception to the statute of limitations, and that therefore they are insulated from the present summary judgment motions. The "continuing violation exception" to the general 300 day limitation provides that if a plaintiff "files a timely EEOC charge about a particular discriminatory act committed in furtherance of an ongoing policy of discrimination," the statute of limitations is extended "for all claims of discrim-inatory acts committed under that policy." *Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 907 (2d Cir.1997); *see Harris v. City of New York,* 186 F.3d 243, 248–50 (2d Cir.1999).

■ To invoke the doctrine, a plaintiff must show either (1) "specific ongoing discriminatory policies or practices," or (2) "specific and related instances of discrimi-nation [that] are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 766 (2d Cir.1998) (quoting *Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994)); *see also Lambert v. Genesee Hosp.,* 10 F.3d 46, 53 (2d Cir.1993) ("[M]ultiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation"), *cert. denied,* 511 U.S. 1052, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994).

■ Bliss fails to allege any "specific ongoing discriminatory policies or practices" in her complaint. Her conclusory allegations are wholly insufficient. *Weeks v. New York State Division of Parole,* 273 F.3d 76, 91 (2d Cir.2001). The law is clear that the continuing violation exception applies only where there are "specific" or "identifiable" discriminatory customs or practices, or specific and related acts that are tantamount to such customs or policies. *Id.* Moreover, she has failed to offer any proof whatsoever to support her allegations in response to the present summary judgment motions. *See Lightfoot v. Union Carbide Corp.,* 110 F.3d at 907 ("[a]lthough the mere allegation of the existence of [a discriminatory] policy would be sufficient to withstand a challenge for failure to state a claim, something more is required to avoid summary judgment on the issue"). Plaintiff's rejoinder is that she has alleged a number of incidents. This is not enough to secure the protection

of the continuing violation doctrine. *See Weeks v. New York State Division of Parole*, 273 F.3d at 91 ("[t]he events pleaded, though embroidered with adjectives and adverbial phrases, are few and unlinked; they are 'not continuous in time with one another or with the timely acts that she has alleged' ") (quoting *Quinn v. Green Tree Credit Corp.*, 159 F.3d at 766).

Even if the alleged discriminatory incidents were continuous and related, Bliss cannot overcome the statute of limitations because there is no evidence that either RCSD or RTA "permitted" the alleged violations "to continue unremedied for so long" that their repetition "amount[ed] to a discriminatory policy or practice." *Id.* Bliss does not challenge RCSD and RTA's assertions that remedial action on the (untimely) incidents was taken through internal channels, to the extent Bliss reported them. In sum, Bliss identifies no specific discriminatory policy of RCSD or RTA, and alleges no toleration of incidents that would be tantamount to such a policy.

I reject plaintiff's counsel's remarkable assertion that "the statute of limitations has not yet begun to run." Logan–Baldwin Aff., ¶ 24, Dkt. # 22. To the contrary, the statute of limitations has not only "begun to run," it has expired. Perhaps most compelling is the fact that plaintiff does not allege anything that occurred to her after September 3, 1999, 300 days prior to the date she filed her charge. In fact, the record establishes that plaintiff ceased working on October 25, 1999, when she began an extended medical leave. All of her claims on which her continuing violation theory must rest, therefore, must be tied to some timely claim based on an event that occurred during the limited period between September 3rd and October 25th. Because plaintiff has offered no evidence to support such a claim, her continuing violation theory fails.

Apparently recognizing the weakness of her continuing violation defense, plaintiff also argues that she was not required to file any charge at all because she considers herself to be a member of a class action in the *Seils* case, and she attempts to "piggyback" on the charges filed in that case. Of course, this argument fails because no class was ever certified in the *Seils* case. Even if one had been certified, she would not been able to elude the charge-filing requirements because she was not similarly situated to either of the plaintiffs in the now-dismissed *Seils* action. *See Seils v. Rochester City School District*, 199 F.R.D. 506 (W.D.N.Y.2001).

For all of the foregoing reasons, Bliss's Title VII claims must all be dismissed.[8]

**8.** While it does not alter my decision, I further note that Bliss, Coons, and Eaton each requested their respective right to sue letters from the EEOC prior to the expiration of the EEOC's 180 day period for investigation. In fact, since Bliss was issued a right to sue letter at her request on July 24, 2000, only 25 days after she filed her charge on June 29, 2000, it appears that she made her request for the right to sue letter almost contemporaneously with filing of the charge. Any possible question on this point dissolves entirely when one reviews the complaint, which is dated June 30, 2000, *the day after the charge was filed,* and in which plaintiff states that "she has requested" a right to sue letter. *Bliss* Complaint, ¶ 2, Dkt. # 1. The situation is similar in *Coons*. Due to the truncated period between the time plaintiffs filed their charges and the time each received her right to sue letter, not only did defendants not have any opportunity to participate in the EEOC's investigation of the charges, the EEOC itself had little, if any, opportunity to investigate the charges. As I had previously held in another case involving plaintiff's counsel: " 'the charge serves to notify the charged party of the alleged violation and also brings the party before the EEOC, making possible effectuation of the Act's primary goal of securing voluntary compliance with its mandates.' " *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 905 (7th Cir.1981), *cert. denied*, 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982); *see also*

### b. *Nancy Coons*

Prior to the commencement of the instant action, Coons had not filed any grievance in her name with RCSD or RTA. She did not file any administrative charge until March 13, 2000. Shortly thereafter, she requested a right to sue letter, and one was issued on April 7, 2000, long before the expiration of the EEOC's 180 day investigation period.

For the reasons already discussed, all of her claims based events occurring more than 300 days earlier (*i.e.*, before May 18, 1999) are, therefore, time-barred. Although Coons alleges discrimination from as far back as 1993 (*Coons* Complaint, ¶ 21), all such claims are untimely and must be dismissed. Her untimely claims include those allegations that she was discriminated against at some point prior to the date she was hired as a full-time teacher in August 1998 as well as any hostile environment claims during her tenure at Franklin because she worked there between 1993 and 1998. In addition, her transfer request, which RCSD denied and which occurred in January, 1999, is time-barred as well.

For the same reasons discussed with respect to Bliss, *supra*, Coons has not properly raised a continuing violation; nor has she established a right to "piggyback" on the charges filed in any other action.

Defendants also move to dismiss Coons' complaint for lack of jurisdiction due to untimely service. It appears that defendants were not properly served within the required 120 day period required by statute, FED. R. CIV. P. 4(m). In fact, it appears that 168 days elapsed between July 6, 2000, when this action was commenced, and December 21, 2000, when Coons first attempted to serve her complaint. In response, Coons' counsel contends that she had reached an agreement with counsel for the RCSD defendants to accept service. Of course, even if true, this does not solve Coons' service issue with respect to the RTA defendants. In any event, I do not need to rely on this additional problem with plaintiff's action because, even if service were proper, Coons' claims cannot withstand the instant summary judgment motions.[9]

For these reasons, all of Coons' Title VII discrimination claims based on events that occurred before May 18, 1999 are dismissed.

### c. *Pamela Eaton*

The evidence before the Court is that Eaton has never filed any grievance with RCSD or the RTA. She did not file any administrative charge with the EEOC until December 13, 2000, exactly 300 days after the February 2000 assault on which she bases much of her action. Shortly thereafter, she requested right to sue letters, which were issued on January 9, 2001 and February 8, 2001, well before the expiration of the EEOC's 180 day investigation period.

For the reasons already discussed, all of her claims based events occurring more

*Vital v. Interfaith Medical Center,* 168 F.3d 615, 619–620 (2d Cir.1999). *Seils v. RCSD,* 98–CV–6197, Decision and Order, entered December 12, 2000 (Dkt.# 139). I am troubled by each plaintiff's attempt to circumvent this long-established procedure, especially in light of plaintiffs' counsel's concession that there is some authority for the proposition that the EEOC may not issue a right to sue letter prior to the expiration of the 180 day period. In-

deed, plaintiffs' Title VII claims could be dismissed on this ground alone.

**9.** The RTA defendants incorrectly assert that Coons failed to file her action within ninety days of receipt of her right to sue letter. However, based upon the information supplied to the Court, it appears that Coons' right to sue letter was issued on April 7, 2000, exactly ninety days before she commenced this action on July 6, 2000.

than 300 days earlier (*i.e.*, before February 17, 2000) are, therefore, time-barred. Although Eaton alleges discrimination from as far back as 1997, all such claims are untimely and must be dismissed. Interestingly, Eaton's assault on February 17, 2000 occurred exactly 300 days before she filed her charge, and is timely. That is the only claim that may survive these procedural hurdles, however, because from that point forward Eaton has been receiving her full pay and benefits while on a leave of the absence, and she does not allege that she was the target of any discrimination while she has been outside the workplace.

For the same reasons discussed with respect to Bliss, *supra*, Eaton has not properly raised a continuing violation. Moreover, she has not established a right to "piggyback" on the charges filed in any other action.

For these reasons, all of Eaton's discrimination claims under Title VII, other than those specifically based upon her February 17, 2000 assault, are dismissed as time-barred.

### 2. *Merits of Plaintiffs' Claims*

#### a. *Mary Lou Bliss*

■ Although it is often difficult to discern the precise nature of plaintiff's claims because she alleges discrimination based on her race (Caucasian), as well as her gender, age and a disability, which was never specified or further described. It appears though that Bliss's primary complaint is one of reverse discrimination, that is, that she was discriminated against because she was white.

Even if Bliss survives the applicable limitations hurdle, summary judgment is proper, on the merits, because Bliss has failed to establish a *prima facie* case that

the RCSD defendants acted in her case with a motive to discriminate against whites. First of all, it is not at all clear as to the nature of Bliss's complaint of reverse discrimination. She did not suffer any adverse employment action at the hands of RCSD. The complaint seems to be that RCSD's officials, for the large part unidentified and unnamed, failed or neglected to discipline students who engaged in inappropriate behavior in plaintiff's classes. It appears that Bliss had a series of disciplinary problems with several students in a class that may have been difficult to begin with since it involved special education students. But, the defect here is that Bliss has failed to set forth sufficient evidence that discrimination against Caucasians was more than likely the reason for the district's alleged failure to act concerning these student-teacher problems. It is hard to see this as anything other than a tragic case involving students having gross disciplinary problems with a teacher. The broad, sweeping nature of plaintiff's claims is highlighted by the fact that she claims multiple forms of discrimination. She not only alleges discrimination because she was white, but because she was female, and of a certain national origin. As to these other forms of discrimination, plaintiff has offered virtually no proof whatsoever that RCSD or RTA acted or were motivated by her gender, her disabled condition (which has never been identified) or her national origin. Plaintiff's speculative and conclusory allegations cannot establish discriminatory motive. *See Duclair v. Runyon*, 166 F.3d 1200, 1998 WL 852867, *2 (2d Cir.1998) (unpublished opinion) ("the Supreme Court has made clear, as have numerous opinions from this court, that the burden of persuasion—the obligation to prove his or her case—is at all times borne by the plaintiff").[10]

---

10. For many of the same reasons articulated above, I further find that Bliss has not estab-

Rather than present proof germane to the issue, plaintiff sets forth in her complaint a host of allegations that have nothing to do with her particular discrimination claims. For example, she references, among other things, an unrelated 1989 action (Bliss Complaint, ¶¶ 14–15), various articles from the Baltimore Sun about defendant Clark Powell's work at a Maryland high school (*id.*, ¶ 19), a school library that needs repair (*id.*, ¶¶ 45–46), the lack of necessary books (*id.*, ¶¶ 47–48), and conflicts among students (*id.*, ¶ 87). None of these allegations have anything to do with the statement of a valid claim by this particular plaintiff under Title VII, § 1983, or § 1985, nor do they support any of the other violations she alleges.

Reduced to its most fundamental level, plaintiff's is simply a case of a person who disagrees with the manner of discipline imposed on various students. As I held in *Seils*, the mere fact that plaintiff's list of instances in which she was offended or even assaulted by her students is long does not necessarily strengthen her claims. Either taken individually or as a group, plaintiff's numerous allegations fail to demonstrate the requisite racial animus against her. To the contrary, the evidence reveals that administrators at Franklin responded, in large measure, to plaintiff's complaints contemporaneously. For example, Bliss does not challenge defendants' assertion that the student who brutally assaulted Bliss in March 1998 was promptly arrested and an order of protection was entered the day after the assault on plaintiff's behalf.

In light of the undisputed facts, there is no basis on which to find any inference that the RCSD defendants responded to the terrible acts of one student with any racial animus against Bliss. As a result,

Bliss has failed to establish a *prima facie* case of reverse race discrimination. *See Cooper v. Wyeth Ayerst Lederle*, 106 F.Supp.2d 479, 495 (S.D.N.Y.2000) (holding that "Title VII does not convey upon an employee the absolute right to demand that a workplace dispute be resolved in a way that is most attractive to her. Title VII simply requires that the remedial action taken be reasonably calculated to end the sexual harassment").

Similarly, Bliss has failed to present any evidence to suggest that RTA treated Caucasian union members less favorably than minority members. Plaintiffs must do more than rest on the allegations in the complaint or on their subjective feelings as to the cause of their troubles. Careful analysis of the facts demonstrates that there is neither direct evidence nor background circumstances which would permit an inference to be drawn that RTA treated plaintiff less favorably because of her race, national origin, or gender. *See Ticali v. Roman Catholic Diocese of Brooklyn*, 41 F.Supp.2d 249, 260–262 (E.D.N.Y.1999); *see also Weeks v. Union Camp Corp.*, 215 F.3d 1323, 2000 WL 727771, *6 (4th Cir. 2000) (unpublished opinion). Thus, other than plaintiff's own conjecture and speculation, there is no evidence that the actions of either RCSD or RTA were motivated by race. Plaintiff's counsel recites a lengthy list of events that have allegedly occurred over the years in the Rochester city schools. Those events, however, had nothing to do with Bliss and her very specific claims.

In addition, even if a *prima facie* case has been made, Bliss has not directed the Court to anything specifically in the record that indicates that the reasons articulated by RCSD or RTA for responding as they did were a ruse. Notwithstanding plain-

lished a *prima facie* case of age, gender, or disability discrimination, or demonstrated that the legitimate, non-discriminatory rea-

sons articulated by the RCSD and RTA defendants were a pretext for such unsupported allegations of discrimination.

tiff's abdication of her obligation at this juncture, I have thoroughly reviewed the record before me in a light most favorable to the plaintiff, and I find no evidence to suggest that RCSD's and RTA's separately stated non-discriminatory reasons for their decisions to respond to Bliss's assault as they did or to respond to her complaints as they did were false. Plaintiff's mere speculations are insufficient to establish pretext. *See Schnabel v. Abramson*, 232 F.3d 83, 88, n. 2 (2d Cir.2000) (quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)) ("while McDonnell Douglas provides a useful analytical framework, ... 'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff '"); *see also James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000) (an employer that has put forth a nondiscriminatory reason for its employment action is entitled to summary judgment "unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination"); *Ellenbogen v. Projection Video Services, Inc.*, 99-CV-11046, 2001 WL 736774 (S.D.N.Y. June 29, 2001). I, therefore, conclude that summary judgment is appropriate.

The proof relied on by plaintiff to demonstrate that either RCSD's or RTA's actions were discriminatorily motivated are so weak as to be virtually nonexistent. These references do not relate directly to incidents surrounding Bliss, but relate to matters occurring in other places, at other times, sometimes years previously and involving matters wholly unrelated to the claims at issue here. For example, plaintiff relies extensively on vague assertions that former Franklin principal Clark Powell slept while at work or was rude to other school personnel, or mishandled a rash of incidents involving fire alarms. She offers additional, albeit irrelevant, evidence that Powell had difficulties at a prior assignment in Maryland. She also claims that there were issues regarding the hiring, placement, and transfer of teachers under a methodology known as the "Singleton formula," notwithstanding the fact that the so-called "Singleton formula" has not been in existence in any RCSD/RTA collective bargaining agreement since 2000, and the fact that plaintiff does not allege that she was adversely impacted by the application of such formula within any of the last eleven years prior to the commencement of this action.

Other evidence offered by Bliss is equally irrelevant. For example, plaintiff references the claims of a variety of other individuals including the plaintiffs in other lawsuits (*i.e.*, Muratore, Medina, Murphy, Seils, Vreeland, Coons, and Eaton). The scope of the claims is so broad that plaintiff even references a supposedly objectionable program at a local college that has no connection with any of the plaintiffs. *Bliss*, Dkt. # 27, ¶ 8; Dkt. # 22, Ex. 19. In large measure, the affidavits submitted on plaintiff's behalf reference the complaints or gripes of the affiants and do not support plaintiff's claims. This is not a class-action, and it cannot be disputed that such evidence has no bearing whatsoever on plaintiff's individual claims of race discrimination.

█ Throughout the papers, plaintiff makes repeated references to the fact that she alleges certain forms of discrimination. *See e.g.*, Memorandum of Law, Dkt. # 26, p. 11 ("Mrs. Bliss has alleged and she can prove ....."); p. 12 ("Mrs. Bliss alleges and has proof ....."). Yet, Bliss never specifically delineates any of the proof she purportedly has.[11] As previously stated,

---

11. Another problem that is readily evident by a review of the papers is the shoddy manner in which they have been prepared. *See, e.g.*,

plaintiff may not rest on her allegations at this juncture. Because she has failed to shepherd the requisite proof in support of any of her claims, or satisfy the requirements of Rule 56(f), all such claims must succumb to defendants' summary judgment motions.[12]

In short, I find that plaintiff has not demonstrated any pretextual reasons that were intended to mask race discrimination. For all of the reasons discussed, *infra*, I find that Bliss has presented no evidence upon which a reasonable trier of fact could base the conclusion that her race was a determinative factor in any relevant decision by RCSD or RTA. Therefore, plaintiff cannot meet her "ultimate burden." *Reeves v. Sanderson Plumbing Products*,

---

Logan–Baldwin Aff., ¶ 4, Dkt. # 22, containing references to "Exhibit F," "Exhibit G," "Exhibit H," "Exhibit I," "Exhibit J," "Exhibit K," and "Exhibit L," when the actual exhibits are labeled with numbers, not letters. Of course, this makes the Court's review more difficult.

12. Plaintiff also contends that defendants' summary judgment motion is premature because plaintiff has been denied certain discovery. The remote possibility that discovery *may* uncover evidence that supports her claims does not preclude the granting of the defendants' motions. Other than alluding to her prior requests seeking evidence purportedly gathered in another case (*Murphy v. Board of Education*, 00–CV–6038), plaintiff has not offered any specifics regarding the nature of the requested discovery, or how the facts sought are reasonably expected to create a genuine issue of material fact. In light of the voluminous material submitted in this motion, it seems remarkable that plaintiff would claim that she lacks any information.

Notwithstanding the fact that plaintiff has failed to meet the requirements of Rule 56(f), and although I was not required to do so, I have undertaken the laborious task of reviewing the discovery and other materials available to the Court in the *Seils* and *Murphy* cases. No admissible evidence was presented in either of those cases that would create any genuine issue of material fact with respect to either Bliss's individual disparate treatment claims of discrimination or her claims of a pattern and practice of discrimination of which she was a victim. Her allusion to prior discovery requests in those cases is of no assistance either. Illustrative of plaintiffs' overly broad requests in *Seils*, for example, were the plaintiffs' 42 deposition notices, requests for the entire personnel files of 62 individuals, requests for the records and files of 29 students, requests for medical, arrest, and conviction information about a former principal, requests regarding incidents that purportedly occurred decades ago, requests for documents regarding the sexual histories of individuals, and requests regarding the alleged teaching of religion. It is not at all apparent how plaintiffs' myriad farfetched requests in that now dismissed case would lead to any relevant evidence in this case.

Of course, the fatal flaw here is that plaintiff has not delineated in a Rule 56(f) affidavit specifically how any opportunity for discovery might lead to admissible evidence which would create a genuine issue of material fact in this case, nor has she attached any proposed requests for discovery in her particular case.

Moreover, a court can reject a request for discovery, even if properly and timely made through a Rule 56(f) affidavit, if it deems the request to be based on speculation as to what potentially could be discovered. *See Gray v. Town of Darien*, 927 F.2d 69, 74 (2d Cir.) ("In a summary judgment context, an 'opposing party's mere hope that further evidence may develop prior to trial is an insufficient basis upon which to justify the denial of [a summary judgment] motion' ") (quoting *Contemporary Mission, Inc. v. United States Postal Serv.*, 648 F.2d 97, 107 (2d Cir.1981)), *cert. denied*, 502 U.S. 856, 112 S.Ct. 170, 116 L.Ed.2d 133 (1991); *Capital Imaging Assoc. v. Mohawk Valley Medical Assoc., Inc.*, 725 F.Supp. 669, 680 (N.D.N.Y.1989) (citing *Waldron v. Cities Serv. Co.*, 361 F.2d 671, 673 (2d Cir.1966)) (citations omitted) (While "Rule 56(f) discovery is specifically designed to enable a plaintiff to fill material evidentiary gaps in its case ... it does not permit a plaintiff to engage in a 'fishing expedition' "), *aff'd*, 996 F.2d 537 (2d Cir.), *cert. denied*, 510 U.S. 947, 114 S.Ct. 388, 126 L.Ed.2d 337 (1993). For all of these reasons, I reject plaintiffs' request for yet another opportunity to supplement their papers.

*Inc.,* 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (internal quotation marks omitted). Summary judgment in the RCSD and RTA defendants' favor is therefore warranted.

### b. *Nancy Coons*

■ Coons has also set forth a lengthy list of discrimination claims, including those based on race, gender, age and disability. Virtually no proof, or even discussion, has been advanced concerning the gender, age, or disability claims. Presumably, that is because no such evidence exists. The heart of Coons' claim appears to be one of reverse race discrimination, that is, that she was discriminated against by the RCSD and RTA defendants because she was white.

Although Coons' claims based upon events occurring subsequent to May 18, 1999 may be timely, they nevertheless must succumb to defendants' motions because Coons has failed to establish a *prima facie* case that the RCSD defendants acted with a motive to discriminate against her. I note initially that, like Bliss, Coons did not suffer any adverse employment action at the hands of any of the RCSD defendants. In much the same fashion, she has failed to present any evidence to suggest that RTA treated Caucasian union members less favorably than other members. Moreover, it cannot reasonably be argued that RTA had any control over decisions to hire or transfer teachers within the school district. As a result, Coons has failed to establish a *prima facie* case of discrimination.

Coon has cluttered her complaint with numerous irrelevant materials. Contained within her complaint are a host of allegations that have nothing to do with plaintiff's particular discrimination claims. For example, she references, among other things, the number of fire alarms (*Coons* Complaint, ¶ 23(b)), conflicts among students (*id.,* ¶ 23(c)); school problems with plumbing and rodents (*id.,* ¶ 23(f)), defendant Clark Powell's lack of interest in "art work" and his decision not to attend a "spring fling" (*id.,* ¶ 23(h)), the denial of Coons' request to invite the media to "kite flying activities" (*id.,* ¶ 23(h)), student sexual activity after school hours (*id.,* ¶ 23(i)), and defendant Larkin's failure to show sufficient interest in the art program (*id.,* ¶ 23(r)). These allegations have nothing to do with the statement of a valid claim by this particular plaintiff under Title VII, § 1983, or § 1985, nor do they support any of the other violations she alleges.

In addition, even assuming *arguendo* that a *prima facie* case has been made, Coons has not directed the Court to any specific evidence in the record even remotely suggesting pretext. In short, I find that Coons too has failed to demonstrate any pretextual reasons that were intended to mask discrimination. Therefore, as with Bliss, Coons cannot meet her ultimate burden. Summary judgment in the RCSD and RTA defendants' favor is warranted.

### c. *Pamela Eaton*

■ Although Eaton's claims based upon the February 2000 assault by a student may be timely, they nevertheless must succumb to defendants' motions because Eaton has failed to establish a *prima facie* case that the RCSD defendants acted with a motive to discriminate against her. I note initially that, like Bliss, Eaton did not suffer any adverse employment action at the hands of any of the RCSD defendants. In addition, Eaton has failed to set forth any evidence whatsoever that discrimination against Native–Americans or whites was more than likely the reason for the district's alleged failure to act concerning her confrontation with the student. Moreover, in light of the undisputed facts,

there is no basis on which to find any inference that the RCSD defendants responded to Gilbert's violent act with any racial animus against Eaton. To the contrary, Eaton does not dispute that since the day of the assault, she has received her full pay and benefits while on a leave of absence. As a result, Eaton has failed to establish a *prima facie* case of discrimination. In much the same fashion, she has failed to present any evidence to suggest that RTA treated Native–American or white union members less favorably than other members.

In addition, even assuming *arguendo* that a *prima facie* case has been made, Eaton has not directed the Court to any specific evidence in the record suggesting that the reasons articulated by RCSD or RTA for responding as they did were a ruse. As I found with respect to Bliss, the so-called proof relied on by Eaton to demonstrate that either RCSD's or RTA's actions were discriminatorily motivated barely exists. Eaton's references, often remarkably similar to those of Bliss and Coons, do not relate directly to incidents surrounding Eaton, but relate to matters occurring in other places, at other times, sometimes years previously and involving matters wholly unrelated to the claims at issue in her case. For example, Eaton levels numerous claims against former Franklin principal Clark Powell, notwithstanding the fact that Eaton never worked at Franklin, where Powell worked. She also claims that there were issues regarding the hiring, placement, and transfer of teachers under a methodology known as the "Singleton formula." However, she only offers evidence that she made a single transfer request in January 1999, a clearly untimely claim given the fact that she did not file an EEOC charge until December 2000.

Other evidence she offers is equally irrelevant. For example, plaintiff submits newspaper articles about the criminal behavior of a number of Marshall students. While such evidence arguably might have some value if it pertained to Glibert, the student who attacked Eaton, it has no probative value in this case, because the articles are not about Gilbert's conduct.

Plaintiff's complaint foreshadowed these irrelevant submissions that have no bearing on plaintiff's claims. Contained within her complaint are a host of allegations that have nothing to do with plaintiff's particular discrimination claims. For example, she references, among other things, an unrelated 1989 action (*Eaton* Complaint, ¶¶ 32(nn-oo)), various articles from the Baltimore Sun about defendant Clark Powell's work at a Maryland high school (*id.*, ¶ 32(ss)), the number of students in her class (*id.*, ¶ 32(i)), the fact that a fellow teacher smoked in another classroom (*id.*, ¶ 32(j)), and her opinion that Donald Murphy, the plaintiff in another case, was "entitled" to a certain position (*id.*, ¶ 32(m)). None of these allegations have anything to do with the statement of a valid claim by this particular plaintiff under Title VII, § 1983, or § 1985, nor do they support any of the other violations she alleges.

Like Bliss and Coons, Eaton offers the affidavits of other plaintiffs in opposition to defendants' motions; however, those affidavits, to a large degree, attempt to bolster the complaints of those individuals offering the affidavit, rather than in support of Eaton's claims. Remarkably, the affidavits Lois Vreeland submitted in each of the three cases before me are *identical.* *See* Vreeland Affs. in *Bliss,* Dkt. # 24; *Coons,* Dkt. # 43; and *Eaton,* Dkt. # 28. Similarly, Donald Murphy submits nearly identical affidavits in *Bliss, Coons,* and *Eaton.* See Murphy Affs. in *Bliss,* Dkt. # s 23, 50; *Coons,* Dkt. # s 47, 64; and *Eaton,* Dkt. # s 29, 48. This cookie-cutter

approach lends no support for plaintiff's individual claims.

In short, I find that Eaton too has failed to demonstrate any pretextual reasons that were intended to mask race or national origin discrimination. Therefore, as with Bliss and Coons, Eaton cannot meet her ultimate burden. Summary judgment in the RCSD and RTA defendants' favor is warranted.

## C. The Sex, National Origin, and Disability Discrimination Claims

Each plaintiff has also alleged discrimination on the basis of sex, national origin, and disability in their prolix complaints. Although pleaded with vigor, these claims are not supported by any evidence. To the contrary, plaintiffs have presented no proof, or even serious argument, to support claims that any actions taken were occasioned by their gender, national origin, or disability. In all of the submissions by plaintiffs, there is no evidence proffered that any plaintiff was disabled, or perceived as such, or that they were treated in any disparate manner based upon their gender or national origin. In fact, plaintiffs have never even articulated their alleged disability, and, to this day, I have not been informed of the alleged basis for any national origin claim by Bliss or Coons. All such claims must, therefore, be dismissed. Plaintiffs' national origin claims must be dismissed for the additional reason that they failed to raise them in their EEOC charges. It is remarkable, and indeed troubling, that plaintiffs' counsel would plead such claims, offer no proof to support them, and yet fail to withdraw such claims in response to defendants' motions for summary judgment.

## D. The Hostile Environment Claims

██ Many of plaintiffs' hostile environment claims must be dismissed for the procedural infirmities discussed above. But, even if I were to reach the merits of plaintiffs' discrimination claims, I would still find that each plaintiff has failed to raise a *prima facie* case against either the RCSD or RTA defendants based on a hostile environment against Caucasians (or, in the case of Eaton, against Native Americans). Although plaintiffs fail to articulate clearly in their respective complaints the precise basis for their claims, they allege in response to the instant motions a hostile work environment claim based upon the alleged harassment by RCSD students against white employees and the failure of the RCSD and RTA defendants to do anything about it.

"When the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment, Title VII is violated." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 20, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (citations and internal quotations omitted). In order to prevail on a hostile work environment claim, a plaintiff must show both "(1) that his workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of his employment and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Shabat v. Billotti,* 108 F.3d 1370, 1997 WL 138836, *1 (2nd Cir. 1997) (unpublished opinion).

But for RCSD itself, the vast majority of the RCSD defendants, however, never were the employer for any of the defendants, and none of the RTA defendants were ever any plaintiff's employer. Neither Bliss, nor Coons, nor Eaton has cited any authority supporting the notion that such defendants may also be liable for a hostile work environment claim.

Moreover, plaintiffs have failed to shepherd the requisite evidence to overcome defendants' motions. Plaintiffs have sim-

ply not shown that any of the actions perpetrated by their students or their management or their union occurred because plaintiffs were of any particular race or national origin. Instead, plaintiffs appear to confuse an environment that may fall short of that which they may desire with hostile work environment discrimination. The mere facts that a classroom is too small, there are too many students per teacher, books are outdated, or even that students commit crimes do not a discrimination claim make.

RCSD's explanation that plaintiffs were treated the way they were by their students because plaintiffs were teachers, and not because they were of any particular ethnic background is not so unreasonable that plaintiffs' assertion of pretext will defeat defendants' summary judgment motions. Therefore, plaintiffs' claims would be dismissed even absent their procedural infirmities.

### E. The Pattern and Practice Claims

Plaintiffs sprinkle their complaints with the conclusory allegation that the RCSD and RTA defendants engaged in a pattern and practice of discrimination. Plaintiffs have done little else though to advance such a claim against these defendants.

First of all, the complaints do not contain a separate cause of action alleging that any defendant engaged in a pattern of discrimination. In any event, if plaintiffs intend to defeat defendants' motions for summary judgment based on evidence of a pattern of discrimination, they have failed to produce sufficient, admissible, relevant evidence to do so. The record is such that no reasonable juror could find that such a pattern existed as to the RCSD or RTA defendants.

■ "[T]o make out a pattern or practice case, a plaintiff must show systematic disparate treatment—that is, that intentional ... discrimination is the standard operating procedure of the defendant, not merely that there have been isolated, sporadic acts of disparate treatment." *Lopez v. Metropolitan Life Ins. Co.*, 930 F.2d 157, 160 (2d Cir.), *cert. denied*, 502 U.S. 880, 112 S.Ct. 228, 116 L.Ed.2d 185 (1991); *see International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). Given the need to prove such pervasive, systematic discrimination, the standard of proof for a pattern or practice claim is higher than for a generic disparate treatment claim. Isolated instances of discrimination will not suffice. *See, e.g., Teamsters*, 431 U.S. at 336, 97 S.Ct. 1843; *Ste. Marie v. Eastern R.R. Ass'n*, 650 F.2d 395, 405–406 (2d Cir.1981). Even if a *Teamsters* analysis could ever be appropriate for individual cases, the evidence adduced in opposition to the RCSD defendants' motions does not present a genuine issue concerning whether they ever engaged in a pattern or practice of discrimination against older Caucasian or Native–American females.

■ Perhaps, the most glaring flaw is plaintiffs' reliance on purely anecdotal evidence. They offer no relevant statistical evidence [13] whatsoever against defendants. In general, "a pattern or practice of disparate treatment is shown through a combination of 'statistical evidence demonstrating substantial disparities ... buttressed by evidence of general policies or specific instances of discrimination.'" *E.E.O.C. v. Chicago Miniature Lamp Works*, 947 F.2d 292, 299 (7th Cir.1991) (quoting *Coates v. Johnson & Johnson*, 756 F.2d 524, 532 (7th Cir.1985)). Plaintiffs' inability to assemble

---

**13.** What little statistical evidence Bliss, for instance, does offer is irrelevant in her case. For example, she offers information about the minority staff population at Freddie Thomas school (Logan–Baldwin Reply Aff. in *Bliss*, ¶ 17, Dkt. # 47), despite the fact that Bliss never alleges that she ever worked or sought to work at Freddie Thomas school.

statistical evidence in support of their positions is understandable, given that they claim a school district whose membership is largely Caucasian is discriminating against members of its own race.

So too, the conclusory allegations regarding plaintiffs or others are insufficient to create a factual issue as to whether the RCSD or RTA defendants engaged in a pattern or practice of discrimination. *See Coral Constr. Co. v. King County*, 941 F.2d 910, 919 (9th Cir.1991), *cert. denied*, 502 U.S. 1033, 112 S.Ct. 875, 116 L.Ed.2d 780 (1992) (observing that "[w]hile anecdotal evidence may suffice to prove individual claims of discrimination, rarely, if ever, can such evidence show a systemic pattern of discrimination ..."). Bliss and Eaton merely speculate that their brutal assaults at the hands of two students was part of some far-reaching pattern of discrimination against them. While the Court certainly sympathizes with them for the terrible injuries they suffered, those injuries alone do not automatically give rise to a Title VII violation. The other claims plaintiffs make of a pattern of discrimination are equally unavailing. For example, Bliss decries the 1988 decision not to place her at Charlotte High School, a fourteen year old claim that is clearly untimely. Bliss also cites difficulties in general with Clark Powell, but she makes no allegation and offers no proof that his actions were directed at her, or based upon her race, age, national origin or gender. Eaton's claims against Powell are even more farfetched inasmuch as Eaton never worked in the same school as Powell.

In sum, to the extent that plaintiffs are attempting to pursue a pattern or practice theory against the RCSD or RTA defendants, all such claims must be dismissed.

### F. The Retaliation Claims

 Absent direct proof, "[t]he order and allocation of burdens of proof in re-

taliation cases follow that of general disparate treatment analysis as set forth in *McDonnell Douglas Corp. v. Green...*" *Sumner v. U.S. Postal Service*, 899 F.2d 203, 208 (2d Cir.1990) (citations omitted). To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show (1) "protected participation or opposition under Title VII known by the alleged retaliator," (2) "an employment action disadvantaging the person engaged in the protected activity," and (3) "a causal connection between the protected activity and the disadvantageous employment action." *DeCintio v. Westchester County Medical Center*, 821 F.2d 111, 115 (2d Cir.1987), *cert. denied*, 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987); *see also Tomka v. Seiler Corp.*, 66 F.3d 1295, 1308 (2d Cir.1995).

 In the instant cases, the protected activity of filing a charge with the EEOC did not occur until *after* the allegedly improper conduct occurred (*i.e.*, when RCSD failed to discipline students as Bliss or Eaton would have liked, or when it failed to offer Coons a full-time position as soon as she desired). As a result, drawing all factual inferences in plaintiffs' favor, I do not find that any plaintiff has satisfied either the first or third prongs of the *prima facie* analysis. In other words, plaintiffs have neither established any protected activity known by the RCSD or RTA defendants nor, *a fortiori*, have they established any causal connection between any protected activity and any disadvantageous employment action. Each plaintiff has also failed to show the necessary nexus between any protected activity and any disadvantageous employment action.

### G. The New York HRL Claims

Plaintiffs' claims under New York Executive Law § 296 *et seq.* (4th causes of

action in *Bliss* and *Eaton;* 3rd cause of action in *Coons* ) must be dismissed as well. As the Second Circuit recently observed, "[w]e have frequently noted that claims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII." *Torres v. Pisano,* 116 F.3d 625, 629, n. 1 (2d Cir.), *cert. denied,* 522 U.S. 997, 118 S.Ct. 563, 139 L.Ed.2d 404 (1997); *see also Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 714–715 and 716, n. 6 (2d Cir.1996) (same); *Ramos v. City of New York,* 1997 WL 410493, *5 (S.D.N.Y.1997) (same). Plaintiffs' inability to establish their *prima facie* case under Title VII is equally fatal to their claims under state law. *Ticali v. Roman Catholic Diocese of Brooklyn,* 41 F.Supp.2d at 267–268.[14]

**H. The Contract Claims**

In a vague manner, Bliss, Coons, and Eaton each allege causes of action premised upon a purported breach of contract (1st and 2nd causes of action in *Bliss;* 1st cause of action in *Coons* and *Eaton* ).[15]

1. *The First Cause of Action*

In their first cause of action, plaintiffs claim that the RCSD and RTA defendants breached a contractual guarantee in the RCSD/RTA collective bargaining agreement of a "safe, non-discriminatory and non-hostile work environment." *See, e.g., Bliss* Complaint, ¶ 105. Inasmuch as plaintiffs have pointed to no such express provision in the collective bargaining

agreement, it appears that plaintiffs rely upon an implied guarantee to that effect. In any event, the Court need not tarry long on these claims against the RCSD defendants because they are time-barred by section 217(2)(b) of New York's Civil Practice Law and Rules ("CPLR"), which provides a four month statute of limitations. Bliss's claims accrued in 1998, when she was assaulted. It was in 1998, therefore, that any alleged breach of any implied guarantee occurred. Since her action was commenced more than two years from any assaultive conduct in 1998, any duty of fair representation claims would be time-barred. *See Langham v. State,* 124 A.D.2d 405, 406, 507 N.Y.S.2d 766 (3d Dep't 1986), *appeal denied,* 69 N.Y.2d 605, 513 N.Y.S.2d 1026, 506 N.E.2d 537 (1987) (holding that CPLR § 217's limitation period begins to run when defendant's action has an impact on plaintiff). The same analysis applies with respect to Coons and Eaton.

Moreover, Bliss concedes that she filed no grievance about this issue. The record further establishes that Coons and Eaton have never filed any grievances on these matters either. It, therefore, appears that all three plaintiffs have failed to exhaust the remedies available to them under the collective bargaining agreement. Their assertions that there were class grievances in which they were members is completely unsupported by the record.[16] *Cf. King v. New York Tel. Co.,* 785 F.2d 31, 33 (2d Cir.1986) (before commencing suit for

---

**14.** While section 296(6) of the HRL, which provides that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so" N.Y. Exec. Law § 296(6), arguably may not be analogous to a provision in Title VII or the ADEA, plaintiffs have submitted nothing whatsoever in support of those broad claims. (8th cause of action in *Bliss* and *Eaton;* 7th cause of action in *Coons* ). There-

fore, those claims should be dismissed as well.

**15.** I note preliminarily that even if plaintiffs' contract claims were to survive the instant motions, I would decline to exercise supplemental jurisdiction because all of the federal claims have failed. 28 U.S.C. § 1367(c)(3).

**16.** The so-called "class grievance" in which Coons claims to have "participated" bears no

breach of a collective bargaining agreement, a bargaining unit member is required to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement).

■ With respect to the RTA defendants, plaintiffs' claims are not subject to the same statute of limitations. In order to establish a claim under Title VII stemming from a union's breach of its duty of fair representation, a plaintiff must show: (1) that the company committed a violation of the collective bargaining agreement with respect to the plaintiff; (2) that the union permitted that violation to go unrepaired, thus breaching its own duty of fair representation; and (3) that the union was motivated by animus with respect to some protected classification such as race or gender or age. *See Coggins v. 297 Lenox Realty Co.*, 108 F.3d 1369, 1997 WL 138781 (2d Cir.1997) (unpublished opinion); *Bugg v. International Union of Allied Indus. Workers of America*, 674 F.2d 595, 598, n. 5 (7th Cir.), *cert. denied and appeal dismissed*, 459 U.S. 805, 103 S.Ct. 29, 74 L.Ed.2d 43 (1982).[17]

■ Turning to the *prima facie* test for determining whether RTA violated Title VII, it is clear that, even assuming *arguendo* that RCSD violated the collective bargaining agreement with respect to Bliss and that RTA permitted such a breach to go unrepaired, Bliss has failed to

satisfy the third prong of the test. She has provided no evidence whatsoever that RTA's actions were motivated in any way by her race, color, sex, or age. *See Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) (a union breaches its duty of fair representation only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith). To the contrary, the undisputed evidence is that the RTA promptly assisted Bliss after the assault she suffered in March 1998. Moreover, plaintiff never filed a grievance on this issue. Bliss's suggestion that she did not seek to file any grievance because she could not elect to have her present counsel, Ms. Logan–Baldwin, represent her, or because she thought such filings would be futile, does not absolve her of her obligation to exhaust her administrative remedies in this context. So too, her novel suggestion that she has been denied effective assistance of counsel is entirely without support in law or in fact.

Because neither Coons nor Eaton ever sought the assistance of RTA on the subject matter of their present breach of contract claims, those claims must fail as well.

### 2. The Second Cause of Action in Bliss

In her second cause of action, Bliss alleges against the RCSD defendants alone[18] a breach of an alleged contractual

---

reference to her name. Moreover, the grievance there is about the assignment to "full classes for the entire year" (Coons, Dkt.# 44, Ex. 8), not about a "safe, non-discriminatory and non-hostile work environment."

**17.** *See also Tabois v. CWA Local 1101*, 1992 WL 131038, \*4, 1992 U.S. Dist. LEXIS 7571, \*10 (S.D.N.Y.1992) (where plaintiff's Title VII claim was based on union's alleged violation of its duty of fair representation, a finding of a breach of that duty was essential to the existence of a Title VII claim); *Shaw v. Gen. Motors Corp., Chevrolet–Tonawanda Div.*, 138 L.R.R.M 2185, 2188 (W.D.N.Y.1991) (where

Title VII and breach of a duty of fair representation claims are both based on discrimination, a finding of a duty-of-fair-representation breach is essential to the existence of the Title VII claim).

**18.** Although Bliss does not identify RTA as a defendant in her second cause of action, she later appears to seek to draw RTA into this claim as well, notwithstanding the fact RTA processed a grievance on this issue on plaintiff's behalf and ultimately assisted in securing the payment she sought. I reject Bliss's attempt to expand upon her complaint in this fashion.

right to pay and benefits as a result of her March 1998 assault. *Bliss* Complaint, ¶ 108. Bliss, however, concedes that RCSD has issued a lump sum payment for the pay and benefits she seeks. As a result, this claim is now moot. I reject Bliss's assertion that RCSD's discretionary payment to her is tantamount to an admission of liability on this claim, and the fact that she has some residual questions about how the lump sum payment was calculated is not sufficient, to defeat defendants' summary judgment motion. For these reasons, Bliss's second cause of action is dismissed.

## I. Claims Premised Upon 42 U.S.C. § 1983

Plaintiffs also assert § 1983 claims. *See* 5th cause of action in *Bliss* and *Eaton;* 4th cause of action in *Coons.* To maintain a § 1983 claim, a plaintiff "must allege conduct under color of state law that deprived [her] of rights secured by the Constitution or laws of the United States." *Katz v. Klehammer,* 902 F.2d 204, 206 (2d Cir.1990) (citation omitted). RTA, however, is a private, non-governmental entity, and is therefore not liable to suit under § 1983 unless its actions were "fairly attributable to the State." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *see also Clapp v. LeBoeuf, Lamb, Leiby & Mac-Rae,* 862 F.Supp. 1050, 1059 (S.D.N.Y. 1994).

To state a claim under § 1983, plaintiffs are therefore required to allege facts which demonstrate that RTA was "a willful participant in joint activity with the State or its agents." *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), quoting *United States v. Price,* 383 U.S. 787, 794, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966). Even viewing the allegations of the complaint in a light most favorable to plaintiffs, they

fail to allege sufficient facts that give rise to the inference that RTA acted in concert with or "obtained significant aid" from any state actor, like RCSD. *See Lugar,* 457 U.S. at 937, 102 S.Ct. 2744. In light of the above, therefore, plaintiffs have no viable civil rights action against the RTA.

Moreover, "complaints alleging § 1983 violations 'must contain specific allegations of fact. . . .; allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983.' " *Humpherys v. Nager,* 962 F.Supp. 347 (E.D.N.Y.1997) (quoting *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 887 (2d Cir.1987)) (citations omitted); *see Corredor v. United Federation of Teachers,* 162 F.3d 1147, 1998 WL 639403 (unpublished opinion) (2d Cir.1998) (affirming dismissal of claims against union brought under § 1983, because they did not allege sufficient acts under which union was acting under color of state law). Because plaintiffs have offered nothing other than conclusory allegations, their claims premised upon § 1983 must be dismissed.

Even generously assuming that any plaintiff had established a tangible property interest of which she may have been deprived, there is no issue of material fact that RCSD afforded each of them all necessary process. Nevertheless, plaintiffs never exhausted their administrative remedies. Indeed, Bliss, for example, never even availed herself of the grievance procedure until after she commenced her action, and the evidence established that neither Coons nor Eaton ever filed any grievance regarding these matters.

Any possible claims plaintiffs were denied equal protection must be dismissed as well. Neither Bliss nor Eaton identify any similarly situated teachers who were treated any differently in response to reported threats or assaultive conduct by students, and they have produced no evidence of any

discriminatory or retaliatory motive against them. *See Brennan v. City of White Plains*, 67 F.Supp.2d 362, 371 (S.D.N.Y.1999) ("[l]ike Title VII claims, Section 1983 claims premised upon equal protection violations ultimately demand proof of purposeful discrimination").

With respect to the Board of Education and its individual numbers, "[i]t is beyond dispute that there is no cause of action for damages under 42 U.S.C. § 1983 for damages against a school board or its members in their official capacities." *Montefusco v. Nassau County*, 39 F.Supp.2d at 238.

For all of these reasons, plaintiffs' § 1983 claims against all defendants must be dismissed.

## J. Claims Premised Upon The Civil Rights Act of 1871, 42 U.S.C. § 1985(3)

■ Coons' fifth cause of action and Bliss and Eaton's sixth causes of action are each premised upon § 1985(3).[19] To state such a claim, a plaintiff must allege: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the law; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *United Brotherhood of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828–29, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983); *Mian v. Donaldson, Lufkin & Jenrette Securities Corp.*, 7 F.3d 1085, 1087–1088 (2d Cir.1993).

■ As this Court held in Seils:
In order to satisfy the second element of a § 1985(3) claim, "the conspiracy not only must have as its purpose the deprivation of 'equal protection of the laws, or of equal privileges and immunities under the laws,' but also be motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *United Brotherhood of Carpenters & Joiners*, 463 U.S. at 829, 103 S.Ct. 3352 *(quoting Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)); *see also Graham v. Henderson*, 89 F.3d 75, 81 (2d Cir.1996). This animus requirement prevents § 1985(3) from being interpreted as providing a federal remedy for all tortious conspiracies that interfere with the rights of

19. 42 U.S.C. § 1985 is entitled "Conspiracy to interfere with civil rights" and § 3 provides:
(3) Depriving persons of rights or privileges If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

others. *See Gagliardi v. Village of Pawling*, 18 F.3d 188, 194 (2d Cir.1994). Moreover, a constitutional conspiracy claim "must be pled with some degree of particularity." *Temple of the Lost Sheep, Inc. v. Abrams*, 88–CV–3675, 1990 WL 156139 (E.D.N.Y. September 26, 1990), *aff'd*, 930 F.2d 178 (2d Cir.), *cert. denied*, 502 U.S. 866, 112 S.Ct. 193, 116 L.Ed.2d 153 (1991). In addition, § 1985(3) "creates no substantive rights, but merely 'provides a remedy for violation of the rights it designates.' " *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 527 (2d Cir.1996) (quoting *Great American Federal Savings & Loan Ass'n v. Novotny*, 442 U.S. 366, 372, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979)).

*Seils v. RCSD*, Decision and Order, entered January 23, 2002, p. 31 (Dkt.# 212).

While in the past some support existed for the proposition that reverse racial discrimination is not actionable under § 1985(3) (*see Davis v. Halpern*, 768 F.Supp. 968, 983 (E.D.N.Y.1991) (describing as problematic a claim under § 1985(3) for reverse racial discrimination); *Marsh v. Bd. of Educ. of the City of Flint*, 581 F.Supp. 614, 617–18 (E.D.Mich.1984), *aff'd without opinion*, 762 F.2d 1009 (6th Cir. 1985), *vacated on other grounds*, 476 U.S. 1137, 106 S.Ct. 2240, 90 L.Ed.2d 688 (1986) (holding that § 1985(3) does not apply to a claim of reverse racial discrimination)), in *Triad Assocs., Inc. v. Chicago Housing Auth.*, 892 F.2d 583 (7th Cir.), *cert. denied*, 498 U.S. 845, 111 S.Ct. 129, 112 L.Ed.2d 97 (1990), the Seventh Circuit concluded that reverse racial discrimination against whites was actionable under § 1985(3). *Id.* at 593. In *Murphy v. Board of Education*, 93–CV–6158, this Court agreed with the reasoning of the Seventh Circuit, and ruled:

> To say that § 1985(3) applies only to discrimination against blacks would give that legislation too narrow a focus. It would mean that § 1985(3) would be unavailable not only to whites but also other racial minorities. "[T]he fact that discrimination against whites [and other racial minorities] was not the primary concern of the 42d Congress in 1871 should not deprive whites from receiving the protections of § 1985(3) expressly granted to any person or class of persons." *Id.* (quotation omitted).

While § 1985(3) may apply to Caucasians, it does not apply in these cases because plaintiffs have failed to marshal the requisite evidence in support of their conspiracy theories—theories which appear to have few boundaries. In fact, plaintiffs have offered no evidence suggesting that the RCSD and RTA defendants conspired together in violation of § 1985(3). As I previously stated in my decisions in *Seils*, I am troubled by the sweeping nature of such serious allegations in light of the fact that plaintiff has submitted no evidence to support them, especially in light of the strictures of Rule 11. FED. R. CIV. P. 11. Rather than proffer evidence, plaintiffs merely rest on their allegations. At this juncture, plaintiffs must do more than merely rely on their pleadings, and since they have not, their § 1985(3) claims must be dismissed as well.

## K. Individual Liability

██ The Title VII, ADEA, and ADA claims against the scores of individuals [20]

---

20. The parties have not presented the Court with any evidence that defendant Henry Hill has been served or has appeared in the *Bliss* action; the complaint against him is, therefore, dismissed. In the *Eaton* action, it appears that defendant Tamara Gilbert has been served but that she has defaulted. In any event, because Eaton offers no basis for federal jurisdiction over Ms. Gilbert, Eaton's complaint against Ms. Gilbert is dismissed.

who have been named as defendants must be dismissed for the following additional reasons. It is well-established that individuals may not be held personally liable under Title VII. *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir.2000); *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 74–75 (2d Cir.2000); *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1241 (2d Cir.1995); *Tomka v. Seiler*, 66 F.3d 1295, 1313 (2d Cir.1995). The same is true under the ADEA and ADA. *See, e.g., Winokur v. Office of Court Admin.*, 190 F.Supp.2d 444, 449–50 (E.D.N.Y.2002) (dismissing ADA claims against defendant in his individual and official capacities); *Boise v. Boufford*, 127 F.Supp.2d 467, 472 (S.D.N.Y.2001) (holding that individual supervisors may not be held personally liable under the ADA or ADEA); *Menes v. CUNY*, 92 F.Supp.2d 294, 306 (S.D.N.Y. 2000) (holding that individual defendants may not be held personally liable under the ADA); *see also EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1279–80 (7th Cir.1995) (noting that ADA, Title VII, and ADEA statutes are very similar and that "[c]ourts routinely apply arguments regarding individual liability to all three statutes interchangeably"). Accordingly, plaintiffs' Title VII claims as well as their baseless ADEA and ADA claims against all individual defendants are dismissed.

■ Moreover, as noted in this Court's decision in *Seils:*

the weight of authority in this circuit also holds that individuals may not be named as defendants in discrimination suits in their official or representative capacities. *See, e.g., Horsford v. Salvation Army*, 99–CV–5721, 2001 WL 1335005, *5–6 (S.D.N.Y. Oct. 29, 2001); *Cooper v. Morgenthau*, 99–CV–11946, 2001 WL 868003, *3–4 (S.D.N.Y. July 31, 2001); *O'Gorman v. Holland*, 97–CV–842, 2000 WL 134514, *4 (S.D.N.Y. Feb.3, 2000); *Hallett v. New York State*

*Department of Correctional Services*, 109 F.Supp.2d 190 (S.D.N.Y.2000) (granting motion to dismiss ADA claims against individual defendants in both their individual and official capacities); *Candelaria v. Cunningham*, 98–CV–6273, 2000 WL 798636, *2 (S.D.N.Y. June 20, 2000) (holding that individuals may not be held liable under the ADA in either their individual or official capacities); *Seres v. Liberty Chevrolet, Inc.*, 98–CV–5999, 1999 WL 11779, *1 (S.D.N.Y. Jan. 12, 1999) (dismissing Title VII and ADEA official capacity claims and noting that there is nothing to show that Congress intended to permit suits against individuals in their official capacity); *Ngwu v. Salvation Army*, 96–CV–58, 1999 WL 2873, *2 (S.D.N.Y. Jan. 4, 1999) (dismissing Title VII claims against the individual director and supervisor in their official capacities); *Pemrick v. Stracher*, 67 F.Supp.2d 149, 168 n. 15 (E.D.N.Y.1999); *Brooks v. Hevesi*, 95–CV–3209, 1998 WL 32712, *1 (S.D.N.Y. Jan. 29, 1998) (defendant could not be held liable under Title VII in his official capacity); *Lane v. Maryhaven Center of Hope*, 944 F.Supp. 158, 162–63 (E.D.N.Y.1996); *but see Coraggio v. Time Inc.*, 94–CV–5429, 1995 WL 242047, *8 (S.D.N.Y. Apr. 26, 1995) (holding that individuals could be sued in their official capacity under Title VII).

*Seils v. RCSD*, entered January 23, 2002, pp. 33–34 (Dkt.# 212); *see also Smith v. New York City Bd. of Educ.*, 96–CV–3486, 2000 WL 64873, *3–4 (S.D.N.Y. Jan. 25, 2000) (dismissing Title VII claims against school principals in their individual and official capacities). Moreover, even if these individuals had been properly named in this action, summary judgment would be appropriate because, as stated herein, plaintiff has not introduced evidence from which a reasonable jury could conclude that any of the defendants violated Title VII, the ADA, or the ADEA.

■ In addition, to the extent that plaintiffs' complaints assert claims against any individual defendants under the HRL, such claims must also fail. While each plaintiff named scores of RCSD individuals, that is insufficient to hold them personally liable. Indeed, it has long been settled that: "[a] corporate employee, though he has a title as an officer and is the manager or supervisor of a corporate division, is not individually subject to suit with respect to discrimination ... under New York's Human Rights Law ... if he is not shown to have any ownership interest or any power to do more than carry out personnel decisions made by others." *Patrowich v. Chemical Bank,* 63 N.Y.2d 541, 542, 483 N.Y.S.2d 659, 473 N.E.2d 11 (1984) (involving claims of age and sex discrimination). With respect to many of the individually named defendants, there is absolutely no evidence that they had the requisite ownership interest or power.

Plaintiffs further allege that "defendants have aided and abetted discrimination/retaliation." *See, e.g., Bliss* Complaint, ¶ 132, Dkt. # 1. Section 296(6) of the HRL states that "[it] shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." The New York Court of Appeals has not decided whether section 296(6) allows an employee to be held liable as an aider and abettor if he participates in the discriminatory conduct but does not have any power to do more than carry out personnel decisions made by others, and the Appellate Divisions of the New York Supreme Court are split on the issue. *See Hicks v. IBM,* 44

F.Supp.2d 593, 599 n. 3 (S.D.N.Y.1999) (noting that the holding of *Tomka* is a subject of controversy among the New York courts); *Gemerek v. Buffalo Sewer Auth.,* 99–CV–879, 2001 WL 603694 at *2 (W.D.N.Y. May 23, 2001) (same); *see also Chamblee v. Harris & Harris, Inc.,* 154 F.Supp.2d 670, 676–677 (S.D.N.Y.2001) (noting split in state decisions). In *Tomka,* the Second Circuit noted that "a defendant who *actually* participates in the conduct giving rise to the discrimination claim may be held personally liable under the HRL." *Tomka v. Seiler Corp.,* 66 F.3d at 1317 (emphasis added). However, the issue need not be resolved, because no plaintiff has offered any evidence that any individually named defendant actually participated in discriminatory conduct.[21]

With respect to the § 1983 claims, plaintiffs have failed to demonstrate any concrete nexus between these individuals and plaintiffs, and little, if any, personal involvement. On the contrary, the evidence establishes that many of the defendants, like the majority of the members Board of Education, had no relation whatsoever to the plaintiffs. With respect to many other individually named defendants, plaintiffs have offered no proof of what they are alleged to have done other than that they held a particular position at a particular time. Moreover, Bliss has not even offered the names of certain of the defendants in her case; rather she has named "all of the sentry staff at BFHS between 1996 and 1999." (Complaint, Dkt.# 1, nte.2).

Accordingly, the discrimination claims against all moving defendants in their individual and official capacities are dismissed.[22]

---

**21.** In any event, even assuming that plaintiffs' HRL claims somehow survived the instant motion, I decline to exercise supplemental jurisdiction because all of the federal claims have failed.

**22.** The RCSD defendants and plaintiffs dispute the sufficiency of service of process on certain individual members of the Board of Education who are named in these actions. For all of the aforementioned reasons, I need

## L. Eaton's Equal Pay Act Claim

 Eaton is the only plaintiff to raise an equal pay claim, and her claim is made only against the RCSD defendants. To state an equal pay claim under the EPA or Title VII, plaintiff must show that: "i) [her] employer pays different wages to employees of the opposite sex; ii) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and iii) the jobs are performed under similar working conditions." *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1310 (2d Cir. 1995). Equal pay claims are generally analyzed according to the same standards under both the EPA and Title VII, although to succeed on a Title VII claim, the plaintiff must also produce evidence of a discriminatory animus. *Id.* at 1312–13.

 After reviewing the record and drawing all inferences in Eaton's favor, I find that plaintiff has failed to raise a *prima facie* case. In opposition to the RCSD defendants' summary judgment motion, Eaton merely contends that during her tenure at Edison Tech, she was "doing the same or similar work as Raymond Neelin but paid less" and that her background was "as good or better" than his. Eaton Aff., Dkt. # 27, ¶ 10. She also alleges that while she was at Marshall, she was "doing the same or similar work and additional work—compared to the male tech teachers" and that she believes that she was paid less than such unidentified males. *Id.* Eaton suggests that she need not provide more at this point. *Id.* Because plaintiff herself has acknowledged that the RCSD defendants have moved, in the alternative, for summary judgment, I disagree.

The issue presented here is whether Eaton has met her burden to show, by competent, admissible evidence, that her position was "substantially equal" to that of any other male who received higher pay. *See Tomka*, 66 F.3d at 1310 ("A plaintiff need not demonstrate that her job is identical to a higher paid position, but only must show that the two positions are 'substantially equal'"). First and foremost, Eaton has offered no admissible evidence that any male, including Neelin, was paid more than she was or how any male performed equal work on a job requiring equal skill, effort and responsibility, or how their jobs were performed under similar working conditions. Indeed, Eaton has offered the Court no evidence regarding the job title, job content, or even the salary of Neelin or the other unidentified individuals. Eaton has even failed to offer the Court any evidence as to her own compensation, and she has made no argument, pursuant to FED. R. CIV. P. 56(f), that she expects to obtain such information through discovery channels. Surprisingly, other than a cryptic reference that she was "denied equal pay for equal pay [*sic*] and/or comparable pay for comparable worth" (Plaintiff's Memorandum in *Eaton*, Dkt. # 30, p. 7), she makes no argument whatsoever with respect to her EPA claim in her memorandum of law.

Accordingly, Eaton has failed to meet her *prima facie* burden and the RCSD defendants are entitled to judgment on Eaton's EPA claim as a matter of law. *See Koster v. Chase Manhattan Bank, N.A.*, 609 F.Supp. 1191, 1195 (S.D.N.Y. 1985) (plaintiff's "failure to produce any specific evidence of males performing work substantially equal to hers at a higher rate of pay . . . [was] fatal" to her EPA claim); *Reece v. Martin Marietta Technologies, Inc.*, 914 F.Supp. 1236, 1242 (D.Md.1995)

not reach this issue because I find that plaintiffs' claims against them fail even if these individuals had been properly served.

(plaintiff failed to establish *prima facie* case where she presented no admissible evidence that jobs in question were substantially equal).

## M. Plaintiffs' Cross–Motions to Amend

Although Rule 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires," a court may deny leave to amend where the amended pleading is considered futile. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir.1994) ("[u]ndue delay and futility of the amendment, among other factors, are reasons to deny leave"); *Picotte v. Community Child Care Ctr.*, 901 F.Supp. 588, 596 (W.D.N.Y.1995) (leave to amend may be denied when the amended pleading is considered futile). "An amendment is considered futile if the amended pleading fails to state a claim or would be subject to a motion to dismiss on some other basis." *McNally v. Yarnall*, 764 F.Supp. 853, 855 (S.D.N.Y.1991).

In the case at bar, plaintiffs' cross-motions to amend lack any proposed amendment or any detailed explanation of how any amendment would state a valid claim for relief. In fact, plaintiffs simply request an order allowing amendment. *See, e.g., Bliss*, Dkt. No. 22, ¶ 5 (requesting an order "permitting plaintiff to serve an amended and/or supplemental complaint should the court for any reason conclude that plaintiff's complaint is deficient in any respect"). Based upon such cursory treatment, it appears that plaintiffs expect this Court to divine the amendments plaintiff may seek and give instructions accordingly. That, of course, is not how a proper motion to amend is made. Most importantly, however, no possible amendment could cure the procedural and substantive defects discussed, herein. For these reasons, plaintiffs' cross-motions to amend are each denied.

## N. Plaintiffs' Cross–Motions for Partial Summary Judgment and Injunctive Relief

Plaintiffs' motions for partial summary judgment and injunctive relief are similarly flawed. With respect to each of their motions for partial summary judgment, not one of the three plaintiffs has put forth any evidence entitling her to such relief. With respect to plaintiffs' requests for a preliminary injunction, a party seeking injunctive relief must show: "(1) irreparable harm [should the injunction not be granted] and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party." *Acquaire v. Canada Dry Bottling Co.*, 24 F.3d 401, 409 (2d Cir.1994). Each plaintiff has utterly failed to meet these requirements as well.

Plaintiffs' cross-motions for partial summary judgment and injunctive relief (Dkt.# 22) are, therefore, denied.

## O. Plaintiffs' Cross–Motions for Leave to File Additional Papers

In each of these cases, the plaintiff has filed nearly identical papers in support of two motions to supplement the record. *See Bliss*, Dkt. # s 33, 39; *Coons;* Dkt. # s 51, 52; and *Eaton*, Dkt. # s 34, 35. The motions are each denied, because they seek to supplement the record with information that is either irrelevant or inadmissible or both, they fail to specifically identify those portions of the record in other cases that they seek to offer to the Court in these matters, and in all but one instance the motions were each filed after the deadline contained in the Court's scheduling orders.

## CONCLUSION

After laboriously sifting through all of the myriad claims in these actions and assessing all of the many defects in each of them, it is clear that the scores of claims presented are either irrelevant to the individual plaintiffs who commenced the instant actions, without support in fact or law, or otherwise so critically flawed that they cannot survive defendants' motions. Particularly illustrative of the illogical manner in which these claims have been maintained is the following paragraph from Eaton's complaint:

> Upon information and belief, Defendants RCSD and RTA wrongfully and unlawfully used Plaintiff as a pawn in their plan to deny teacher Murphy *his* employment, civil and contract rights and to retaliate against *him* for *his* prior complaints. These defendants *thereby* denied Plaintiff *her* employment, civil and contract rights and retaliated against *her* for her prior complaints.

*Eaton* Complaint, ¶ 32(z) (emphasis added). It strains credulity that Eaton could believe (or her attorney could attest to pursuant to FED. R. CIV. P. 11) that any alleged action against Murphy, no matter how objectionable, leads *a fortiori* to the conclusion that any "rights" that Eaton may have were also abridged in some fashion. This is but one example of the overreaching in these actions. I caution plaintiffs' counsel that her role as an attorney is governed by rules of conduct and procedure. I lament that those rules have not been followed in these and other cases in which she has thrown every imaginable claim at the RCSD and RTA, among others, in the apparent hope that something might withstand judicial scrutiny.

The motions of the Rochester City School District defendants and Rochester Teachers' Association defendants for summary judgment (Dkt. # s 15 and 8, respectively, in *Bliss;* Dkt. # s 32 and 13, respectively, in *Coons;* Dkt. # s 22 and 6, respectively, in *Eaton* ) are granted, and the complaints and each and every one of plaintiffs' claims are dismissed with prejudice. Plaintiffs' cross-motions for partial summary judgment, injunctive relief, and to amend the complaint (Dkt. # 22 in *Bliss;* Dkt. # 40 in *Coons;* Dkt. # 26 in *Eaton* ) are, in all respects, denied. Plaintiffs' discovery-related cross-motions (*id.*) are each denied as moot. Plaintiffs' motions to supplement (Dkt. # s 33, 39 in *Bliss;* Dkt. # s 51, 52 in *Coons;* Dkt. # s 34, 35 in *Eaton* ) are each denied.

IT IS SO ORDERED.